VAN NORTWICK, J.
 

 Juan Romero, Claimant, appeals an order of the Judge of Compensation Claims (JCC) denying Claimant’s request to appoint an expert medical advisor (EMA) and denying his claim for permanent income impairment benefits. Because we agree that Claimant timely requested an EMA and that a conflict existed among the opinions of the medical experts, we reverse on both issues.
 

 Background
 

 On October 10, 2008, Claimant injured his lower back while working as a painter for the Employer/Carrier (E/C). The E/C accepted the injury as compensable and authorized treatment with Dr. Stolzer. Claimant treated with Dr. Stolzer through March 2009, at which time Dr. Stolzer opined that Claimant had reached maximum medical improvement (MMI) with a
 
 0%
 
 permanent impairment rating (PIR). Claimant subsequently treated with Dr. Waeltz, who saw no objective sign of an impairment rating resulting from the October 10, 2008, injury and otherwise agreed with Dr. Stolzer’s diagnosis. Thereafter, Claimant exercised his right to an independent medical exam (IME) and was examined by Dr. Broom. In a report issued May 14, 2009, Dr. Broom opined Claimant had reached MMI and sustained a 5% permanent partial impairment.
 

 On June 18, 2009, Claimant filed a petition for benefits (PFB) seeking permanent impairment benefits based on a
 
 5%
 
 PIR, as diagnosed by Dr. Broom. One week later, the JCC issued an order placing Claimant’s PFB on an expedited docket. On July 2, 2009, the E/C filed a response to Claimant’s PFB that refuted Claimant’s entitlement to permanent impairment benefits on the ground that Claimant’s treating physicians assigned Claimant a 0% PIR.
 

 On August 12, 2009, the parties filed a pretrial stipulation with the JCC. The parties attached to the stipulation the previously admitted medical reports of Doctors Broom, Waeltz, and Stolzer. That same day, Claimant filed a “Notice of Conflicting Medical Opinions” with the JCC asserting that a conflict existed in the medical opinions of Doctors Broom and Stolzer concerning Claimant’s PIR. The JCC issued
 
 *838
 
 an “Order on Claimant’s Motion for Expert Medical Advisor/Notice of Conflict in Medical Opinions” denying Claimant’s “motion/notice” because it was vague, nonspecific, and lacked any attachments.
 

 The JCC held an expedited hearing on Claimant’s PFB on August 26, 2009. At the outset of the hearing, Claimant again asserted that the opinions of Doctors Broom and Stolzer conflicted and requested the appointment of an EMA. The E/C agreed there was a difference in expert medical opinions, but opposed Claimant’s EMA request, arguing the request was untimely. The JCC denied Claimant’s request to appoint an EMA, finding there was not a timely or specific request in advance of the final hearing and reasoning that Claimant knew of the perceived inconsistency in opinions in May 2009. Notwithstanding the E/C’s acknowledgement of a conflict, the JCC found Claimant failed to present sufficient evidence demonstrating a conflict in the medical opinions. Specifically, the JCC found, “Dr. Broom did not put his rating into the proper context so as to create a true conflict in evidence presented through the other physicians.” Relying on the opinions of Doctors Waeltz and Stolzer, the JCC found Claimant sustained a 0% PIR. Finding Claimant failed to prove he suffered a 5% permanent impairment, the JCC denied Claimant’s request for permanent impairment benefits. This appeal followed.
 

 Analysis
 

 If there is a disagreement in the opinions of health care providers, the JCC shall appoint an EMA.
 
 See
 
 § 440.13(9)(c), Fla. Stat. (2008). “While [section 440.13(9) ] contains no provisions governing the timeliness of requests for appointments of [EMAs], the absence of statutory deadlines does not authorize unreasonable delays in requests for evaluation by [EMAs] once material disagreement in the opinions of health care providers comes to a party’s attention.”
 
 Palm Springs Gen. Hosp. v. Cabrera,
 
 698 So.2d 1352, 1354 (Fla. 1st DCA 1997). “On the other hand, sections 440.13(9)(c) and 440.25(4)(d) contemplate resort to an [EMA], even if the disagreement between medical providers becomes evident only after the merits hearing has begun,” and even if neither party requests appointment of an EMA.
 
 Id.
 
 at 1354;
 
 see also AT & T Wireless v. Frazier,
 
 871 So.2d 939 (Fla. 1st DCA 2004). The standard is whether the EMA request is made with “reasonable promptness after the conflict in the medical opinions become[s] apparent.”
 
 Frazier,
 
 871 So.2d at 940;
 
 see also Cabrera,
 
 698 So.2d at 1354.
 

 Here, Claimant’s request for an EMA was reasonably prompt. The JCC set Claimant’s PFB on an expedited docket and required the case to be heard approximately two months after filing. Claimant did not formally request an EMA until the day of the expedited hearing, but Claimant notified the JCC of the disagreement in the medical opinions at the time of pretrial. Although Claimant was on notice as to the potential conflict as early as May 14, 2009, when Dr. Broom issued his IME report, no basis existed to request an EMA until July 2, 2009, when the E/C issued its denial of Claimant’s PFB. Indeed, Claimant had no reason to believe benefits would not be provided or engage in discovery until the E/C denied his request for permanent impairment benefits.
 

 We find that, under these circumstances, the JCC’s determination that the EMA request was untimely constituted an abuse of discretion. The parties were not aware of a substantial conflict several months in advance.
 
 Cf.
 
 W.S.
 
 Badcock Corp. v. Knight,
 
 720 So.2d 619 (Fla. 1st DCA 1998) (holding EMA request filed on eve of hearing untimely where conflict in medical opinions was evident in pretrial stipulation
 
 *839
 
 filed nine months prior to final hearing);
 
 Walsdorf Sheet Metal Works, Inc. v. Gonzalez,
 
 719 So.2d 355, 356-58 (Fla. 1st DCA 1998) (holding motion for EMA made for first time at close of final hearing was untimely where parties knew of disagreement between health care providers five months before hearing). Claimant brought the conflict to the JCC’s attention at the time the pretrial stipulation was filed.
 
 See Cabrera,
 
 698 So.2d 1352 (rejecting proposition that party who fully complies with all pretrial orders is nevertheless foreclosed from requesting evaluation by EMA, and holding “[e]ven without a party’s requesting it, the [JCC] ‘shall’ appoint an [EMA], if the requisite disagreement in the opinions of health care providers is apparent at the time of the pretrial hearing”). Given the nature of the expedited proceedings, the request for an EMA was reasonably prompt, and the JCC abused his discretion in determining otherwise.
 

 The JCC also erred in denying Claimant’s request for an EMA on the ground that Dr. Broom’s IME report was not sufficiently persuasive to establish a conflict.
 
 See Chapman v. Nationsbank,
 
 872 So.2d 390, 392 (Fla. 1st DCA 2004) (holding JCC lacks authority to resolve conflicts between physician opinions once claimant has requested EMA). Dr. Broom’s IME report reveals he performed an IME based on Claimant’s October 10, 2008, work accident, and clearly states that Claimant has reached MMI and has a
 
 “5%
 
 permanent partial impairment.” In contrast, Dr. Stolzer issued a report indicating Claimant has reached MMI with a 0% permanent impairment resulting from the work injury. Thus, evidence in the record does not support the JCC’s finding of no conflict in the medical evidence, as the record indicates clear disagreement regarding the existence of permanent impairment. Indeed, in deciding the case, the JCC found it necessary to explicitly reject Dr. Broom’s medical opinion “to the extent that his opinions [were] inconsistent” with the opinions of Dr. Waeltz and Stolzer. Moreover, the JCC’s finding of no conflict contravenes the JCC’s rationale for deeming the EMA request untimely— that the conflict was apparent months before hearing.
 

 Because the medical opinions conflicted and Claimant timely requested an EMA, the JCC reversibly erred in ruling on the matter without the guidance of an EMA to resolve the conflict. Consequently, we REVERSE and REMAND for the designation of an EMA.
 

 DAVIS, and ROWE, JJ., concur.