991 So.2d 407 (2008)
Sylvia DAWSON, Appellant,
v.
CLERK OF the CIRCUIT COURT-HILLSBOROUGH COUNTY and Johns Eastern Co., Appellees.
No. 1D07-6236.
District Court of Appeal of Florida, First District.
September 23, 2008.
*408 Michael J. Winer, Tampa, for Appellant.
Ann L. Robbins of the Hillsborough County Attorney's Office, Tampa, for Appellees.
THOMAS, J.
In this workers' compensation appeal, Appellant (Claimant) challenges the Judge *409 of Compensation Claims' (JCC) denial of her request for a one-time change of physician, the appointment of an expert medical advisor, and the constitutionality of section 440.13(2)(f), Florida Statutes (2003). For the reasons explained below, we reverse the JCC's denial of a one-time change of physician and appointment of an expert medical advisor. Our reversal as to the first issue renders the constitutional challenge moot.

One-Time Change of Physician
On March 5, 2004, Claimant suffered compensable injuries to her right wrist and knee. For her knee injury, Claimant treated with Dr. Raterman until April 2007, at which time the doctor opined the compensable injury was no longer the major contributing cause of Claimant's need for treatment. Dr. Raterman attributed 51% of the need for treatment to degeneration, and 49% to the injury. Claimant subsequently filed a petition for benefits seeking a one-time change of orthopedic physician. Appellee/Employer-Carrier (E/C) denied this request.
The JCC found that because Claimant presented no evidence to rebut Dr. Raterman's opinion as to the major contributing cause of her need for treatment, she was not entitled to the one-time change of physician provided in section 440.13(2)(f), Florida Statutes. The JCC also found that this provision does not allow for a one-time change of physician for the sole purpose of establishing a causal connection between a compensable injury and the continued need for treatment. The JCC concluded that, in such circumstances, the proper procedure is to obtain an independent medical examination pursuant to section 440.13(5), Florida Statutes. We find that the JCC misapprehended the provisions of section 440.13(2)(f).
Section 440.13(2)(f), Florida Statutes (2003), provides in relevant part:
Upon the written request of the employee, the carrier shall give the employee the opportunity for one change of physician during the course of treatment for any one accident.... The carrier shall authorize an alternative physician who shall not be professionally affiliated with the previous physician within 5 days after receipt of the request. If the carrier fails to provide a change of physician as requested by the employee, the employee may select the physician and such physician shall be considered authorized if the treatment being provided is compensable and medically necessary.
(Emphasis added).
In construing a statute, courts must look to its plain language. See Fla. Dep't of Educ. v. Cooper, 858 So.2d 394, 395 (Fla. 1st DCA 2003). The use of the word "shall" in the quoted portion of section 440.13(2)(f) means that this one-time change is mandatory, regardless of the e/c's position as to either the change of physician or the new physician's treatment. The statute affords an e/c the opportunity to retain control over the choice of the authorized doctor if they timely authorize a claimant's request for a change; failure to do so forfeits this control. If the e/c are of the opinion that the treatment recommended or provided is unnecessary or unrelated to the industrial accident, they can risk denying authorization for the treatment, pending resolution of the issue by the JCC.
In interpreting a prior, but similar, version of section 440.13(2)(f), this court stated that after an employer has authorized a medical provider to evaluate and treat a claimant, "the employee may request a one-time change of physician. In that case, the employer must offer the employee a choice of at least three alternative physicians." See St. Augustine Marine *410 Canvas & Upholstery, Inc. v. Lunsford, 917 So.2d 280, 283 (Fla. 1st DCA 2005) (emphasis added). While section 440.13(2)(f) no longer requires the employer to offer a list of three alternative physicians, it does require the employer to offer an alternative physician upon the claimant's request. Consequently, we reverse the JCC's order on this issue, and remand with instructions to authorize Claimant's request for a one-time change of physician.

Appointment of Expert Medical Advisor
Claimant had a preexisting left shoulder condition which she contended became worse because her right hand was immobilized for most of the two years following her accident, requiring her to use her left arm more often than usual. E/C sent Claimant to Dr. Buscemi in 2005 to address her complaints of left shoulder pain. In August 2006, after comparing an MRI taken when Claimant was first diagnosed with her shoulder condition to a more recent MRI, Dr. Buscemi concluded that Claimant's shoulder condition had worsened, opining that it was due to over-use of her left arm as she compensated for the immobilization of her right hand.
At some point, E/C transferred treatment of Claimant's wrist injury to Dr. Greene, who was authorized to only treat Claimant's wrist. Claimant informed Dr. Greene about her left shoulder condition, telling him she had been diagnosed with a torn rotator cuff and that the shoulder pain had increased, as she used her left arm to compensate for her inability to use her right hand. Dr. Greene did not examine Claimant's shoulder, and his only medical history regarding her shoulder was what Claimant provided and a letter from Claimant's previous doctor addressing her complaints of shoulder pain.
During his deposition, Dr. Greene was asked whether he believed there was any causal connection between Claimant's reported increased use of her left arm and the worsening of her shoulder condition; he opined there was not. E/C consequently asked the JCC to appoint an expert medical advisor based on the conflict in the opinions of Dr. Buscemi and Dr. Greene. Claimant objected on the ground that Dr. Greene's opinion about her shoulder was inadmissible because he was not an authorized treating doctor with respect to Claimant's shoulder. Claimant also objected on the ground that Dr. Greene's opinion lacked a proper foundation because he did not have a complete medical history of Claimant's shoulder condition and did not examine her shoulder.
The JCC appointed an expert medical advisor, who eventually opined there was no causal connection between Claimant's shoulder condition and her compensable injury. Consequently, the JCC denied Claimant's request for treatment of her shoulder.
Section 440.13(9)(c), Florida Statutes (2004), provides, in relevant part:
If there is disagreement in the opinions of the health care providers, if two health care providers disagree on medical evidence supporting the employee's complaints or the need for additional medical treatment, or if two health care providers disagree that the employee is able to return to work, ... the [JCC] shall ... order the injured employee to be evaluated by an expert medical advisor.
Section 440.13(5)(e), Florida Statutes (2004), provides that "[n]o medical opinion other than the opinion of a medical advisor appointed by the [JCC] ... an independent medical examiner, or an authorized treating provider is admissible in proceedings before the judges of compensation claims." The JCC found Dr. Greene's testimony regarding the causal relationship *411 between Claimant's industrial accident and her shoulder condition was admissible because Dr. Greene was her authorized treating physician. We agree.
Nothing in section 440.13(9)(c) requires that for an opinion to be admissible, the doctor giving the opinion must be authorized to evaluate or treat a specific condition or body part; it only requires that the doctor be authorized to treat the claimant. The sufficiency of an authorized doctor's opinion is a factual question to be resolved by the JCC.
Here, however, there was not competent, substantial evidence to support the JCC's finding of a conflict of opinion. Although Dr. Greene is an orthopedic surgeon, he was not authorized to treat Claimant's shoulder, he did not examine her shoulder, and he did not review any diagnostic studies or medical records pertaining to her shoulder other than a letter from Claimant's previous doctor to Dr. Buscemi noting her complaints of shoulder pain. Under these circumstances, Dr. Greene's opinion was insufficient to create a conflict of opinion triggering the necessity of an expert medical advisor. Thus, we reverse the JCC's appointment of an expert medical advisor.
REVERSED and REMANDED for proceedings consistent with this opinion.
BROWNING, C.J., and BARFIELD, J., concur.