PER CURIAM.
Joseph P. Holl, a UPS tractor-trailer operator, appeals an order denying him temporary total disability (TTD) benefits beyond the 401-week limitation in section 440.15(3)(c), Florida Statutes (2002). The applicable portion of the 2002 version of section 440.15 at issue reads, in relevant part:
(3) PERMANENT IMPAIRMENT AND WAGE-LOSS BENEFITS—
(c) Duration of temporary impairment and supplemental income benefits.— The employee’s eligibility for temporary benefits, impairment income benefits, and supplemental benefits terminates on the expiration of 401 weeks after the date of injury.
Holl argued that this provision does not apply to the temporary disability benefits at issue. The JCC ruled to the contrary, construing subsection (3)(c) — in conjunction with the remainder of section 440.15— as providing “that an injured worker is subject to a period of 401 weeks from the date of injury within which temporary benefits, impairment benefits and supplemental income benefits may be sought. Once such benefits are determined to be due, the worker is entitled to be paid up to a maximum of 104 weeks of these benefits, so long as the 401-week period has not expired.” Holl appeals this interpretation, one we review de novo. See Lombardi v. S. Wine & Spirits, 890 So.2d 1128, 1129 (Fla. 1st DCA 2004).
The interpretive question is whether TTD benefits are within the class of “temporary benefits” to which the 401-week limitation in the 2002 version of the statute applies. Although subsection (3)(c) is contained within a subsection entitled “PERMANENT IMPAIRMENT AND WAGE-LOSS BENEFITS,” it imposes the 401-week limitation on three categories of benefits: “temporary benefits, impairment income benefits, and supplemental benefits.” The latter two categories are mentioned explicitly in the titles to subsection (3)(a) (entitled “Impairment benefits”) and subsection (3)(b) (entitled “Supplemental benefits”).
The former is included in subsection (3)(c), whose title is “Duration of temporary [sic] impairment and supplemental income benefits ” (we note that a comma between “temporary” and “impairment” apparently is missing). While the placement of a limitation on “temporary benefits” in this subsection may be somewhat out of place, we cannot simply ignore the Legislature’s intent (as of 2002) that such benefits be limited to 401 weeks; that is what subsection (3)(c) directs, and TTD benefits are within the classification of “temporary benefits” to which the statute applies.
This plain reading of subsection (3)(e) is supported by the fact that because impairment and supplemental benefits are based on permanent medical impairments, though paid only temporarily, they are distinct categories within the three listed in the statute; they are, in that sense, not “temporary benefits.” Specifically, impairment benefits are payable after an injured worker reaches maximum medical improvement (MMI), and continue until the earlier of the worker’s death or, for dates of accident prior to October 1, 2003, three weeks for each percentage point of impairment (or the expiration of 401 weeks after the accident). See § 440.15(3)(a)3., Fla. Stat. (2002); Ch. 03-412, § 18,- at 3924, Laws of Fla. (changing basis for impairment benefits to two weeks per percentage point of impairment for each of the first ten percentage points, three weeks for *1064 each of the next five percentage points, four weeks for each of the next five percentage points, and six weeks for each of the remaining percentage points). Supplemental benefits are payable “as of the expiration of the impairment period” if certain other requirements are met; thus, they are also payable only after the injured worker has reached MMI. See § 440.15(3)(b), Fla. Stat. (2002). Although the language in subsection (3)(c) regarding 401 weeks was removed from chapter 440 on the same day supplemental income benefits were likewise removed from the Florida Workers’ Compensation Law (October 1, 2003), see chapter 03-412, section 18, at 3922-24, Laws of Florida, its removal does not necessarily establish a legislative intent to tie this limitation solely to supplemental benefits as opposed to temporary disability benefits; this is so, particularly given that the 401-week limit undoubtedly applied to impairment benefits, yet impairment benefits were not removed from the statute.
Additionally, the 401-week cap appears to include temporary disability benefits in the following way. An injured worker is at first entitled to temporary disability benefits as he recuperates, up to a combined total of 104 weeks of payment. See § 440.15(2)(a) & (4)(b), Fla. Stat. (2002). Upon attaining MMI, the injured worker becomes entitled to three weeks of benefits for each percentage point of impairment. See § 440.15(3)(a)3., Fla. Stat. (2002). An injured worker can, in theory, obtain up to a 99 percent impairment rating. See 1996 Florida Uniform Permanent Impairment Rating Schedule, § 15, at 116— 17 (available at http://genexservices.webl2. hubspot.eom/Portals/171716/docs/1996% 20FL% 20Impairment% 20Rating% 20Schedule.pdf). Thus, an injured worker can get 99 times three weeks, or 297 weeks of impairment benefits. The total weeks of available benefits, then — 104 plus 297— is 401 weeks of benefits.
We reject the argument that the 401-week limit does not apply to temporary disability benefits due to the 104-week limit on temporary disability benefits, defined by case law as a “bank” to draw from rather than a cap or time limit by which benefits must be taken, see Auman v. Leverock’s Seafood House, 997 So.2d 476, 478-79 (Fla. 1st DCA 2008). There is nothing inherent in the nature of a “bank” of benefits that would preclude a further limit on the same group of benefits.
All of the foregoing reasons convince us that the JCC did not err here.
AFFIRMED.
MARSTILLER and MAKAR, JJ., concur.
THOMAS, J., dissents with opinion.